### JAMES McFILLEN

*v.*

### EDMUND HOFFMAN and wife et al.

The defendant owned a lot of land, and his wife an adjoining lot. They gave a bond and mortgage covering both lots, but the wife was only a surety therein. With the money obtained from the mortgage the husband finished a row of four houses, which were being built on part of the premises when the mortgage was given; one of these houses stood entirely on the wife's lot. On foreclosure of the mortgage,—*Held*, that while the wife's right as surety must be recognized and protected, yet, as to an execution creditor of the husband, she was a principal so far as any of the money borrowed on the mortgage had been applied to the erection of the house on her lot; and a reference was ordered to ascertain the amount.

---

Bill to foreclose and cross bill. On final hearing on pleadings and proofs.

*Mr. A. Hugg,* for complainant.

*Messrs. Jenkins & Jenkins,* for Mrs. Hoffman.

McFillen v. Hoffman.

THE CHANCELLOR.

On the 12th of October, 1875, Edmund Hoffman was the owner of a lot of land in Gloucester City, fronting on Powell and Market streets, forty feet on each street, and one hundred and thirty-six feet in depth. His wife owned a lot adjoining it, of the same depth, and fourteen feet front on each of those streets. He then borrowed $2,000 from the Camden Mutual Insurance Association, and secured the repayment thereof by the bond of himself and wife of that date to the association, payable in one year from that time, with interest, and a mortgage upon the two lots of land above mentioned, which were described as one lot, and as the same premises conveyed to him by a certain deed and part of the property conveyed to her by a certain other deed. At the time of giving the mortgage he was in possession of the whole property, and was improving it by building on part of it. It appears to have been vacant when he began to build on it. When the mortgage was given he was building on the Powell street end four houses, which covered all that end of his lot and twelve feet (all but two feet—probably left for an alley) of that end of his wife's lot. These houses cost him $1,000 apiece. After the mortgage was given, he finished them and built two other houses on the Market street front of the property. They cost him $3,500. On the 19th of September, 1876, the mortgagees, at his request and for his accommodation merely, released to him and his wife the half of the lot which fronted on Market street. His object in obtaining the release was to borrow money by mortgage of the released portion of the property. In October, 1877, the sheriff of Camden county conveyed the remainder of the mortgaged premises to the defendant Owen Smith, pursuant to sale under an execution at law in his favor against Hoffman; and in the same year, the mortgagees assigned the mortgage to the complainant. The complainant filed his bill to foreclose, and Mrs. Hoffman having answered it, filed a cross-bill in which she alleged that she was a mere surety for her husband in the bond to the insurance association; that by the mortgage her property was mortgaged merely as collateral security for his debt, as the association knew,

and that she neither knew of, nor consented to, the release when it was made; and praying that the bond may be declared void as to her, that that part of the unreleased portion of the mortgaged premises to which her husband had title be sold before her land, and that before selling her land the value of that part of her husband's land which was released, be credited on the amount due on the mortgage; and further, that the sheriff's deed to Smith may be declared null and void, so far as her land is concerned.

The only subject of discussion at the hearing, and the only matter submitted for decision, is what, under the circumstances, are her rights under the mortgage. It is admitted that the mortgagees knew when the mortgage was given, that she was thereby mortgaging her separate property for the payment of the mortgage debt. And it is settled law that where a wife pledges her separate estate for her husband's debt, she is entitled to the ordinary rights and privileges of a surety. It appears that the loan was negotiated by Hoffman, and on his own account. He says that the secretary of the mortgagees with whom, as their agent, the business seems to have been transacted, assured his wife that her property would be held only as collateral security. This is not denied, though there is an answer by their secretary in his testimony which may have been, and probably was, intended as a denial of the truth of this assertion. It appears, however, by the testimony of Mr. Hoffman, that the mortgage money was borrowed for the purpose of making the improvements—erecting the buildings—on the whole property. At the time when the mortgage was given, the houses on the Powell street end of the property were in the course of construction. They were a row of four houses built together; and they covered not only his lot, but also all his wife's lot except two feet, probably, as before suggested, reserved for an alley or passage-way. These houses seem to have been thirteen feet wide, and one of them appears to be almost entirely (twelve feet in width of it) on her lot. Hoffman testifies that at the time he procured the loan the Powell street houses were in course of completion, but that the Market street houses had not yet been commenced; that it was

McFillen v. Hoffman.

all one " business operation," and that the Powell street houses are all in one row, and were all built at the same time and cost $1,000 apiece. He also testifies that he borrowed the money for which the mortgage was given, in order to make those improvements. It does not appear what part of the money, if any, went into the house built on Mrs. Hoffman's property, but it does appear clearly that a house which cost $1,000 was built by her husband almost entirely on her lot on Powell street, and that her property has the advantage of the improvement. Her husband says the money was borrowed to make this and the other improvements on the whole property. It. does not appear, it may be remarked, what money of his was spent in improving her part of the Market street end of the property. She now claims that she is a mere surety, and asks to be dealt with as such. But the money was borrowed for the improvement of her property, as well as that of her husband, and she ought to respond as a principal to the extent of the cost of the improvements made with the mortgage-money on her lot. In *Dickinson v. Codwise, 1 Sandf. Ch. 214,* where a husband borrowed money on his bond and a mortgage made by him and his wife of her separate property, and the borrowed money was employed by the husband in paying for permanent and valuable improvements put by him on her separate property, or in repaying money which had been previously borrowed and used for the purpose, it was held that, under the circumstances, the debt was in equity hers, so far as it went to or for the improvement of her separate estate. In the case in hand there must be an inquiry on this point, to ascertain whether Mrs. Hoffman's lot is in equity chargeable with any part of the mortgage money, and if it shall be found to be so chargeable, to that extent she will be held to be a principal and her lot liable accordingly. To that extent the equity of Smith, the purchaser of Hoffman's interest in the Powell street property, at the sale under the execution at law, is superior to hers. Beyond that, she is not liable ; for her equity is superior to his, and his land (that to which Hoffman himself had title) is to be sold to pay the complainant. The value of the released portion is, I assume, such as to quite equal the bal-

ance which will be due on the mortgage after applying the proceeds of the sale of the land owned by Smith.   The complainant is entitled to his costs, of both the original suit and the cross-suit.   The latter was not, it may be remarked, necessary to the defence of Mrs. Hoffman.   The complainant in the cross-bill is entitled to costs of that bill as against Smith, for the bill was necessary as against him to reform his deed, which included in its description her property.